### WILLIAM EDWARDS & Co., SUBSTITUTED, v. SCHLUND ET AL.

1. CANAL LANDS—EVIDENCE AGAINST OWNERSHIP BY STATE.

　　Where there was no record kept of lands condemned by the state for canal purposes, and a surveyor sent by the commission subsequently established to preserve evidence in regard to such lands, evidence that his survey includes lands which were unnecessary for canal purposes, and that the commission established the boundaries of the canal lands upon the maps and charts so as to include all such lands, is sufficient to overcome the *prima facie* evidence of ownership on behalf of the state.

2. POSSESSION OF ADJOINING LAND TO PROTECT CANAL.

> In building and maintaining the state canal, the commissioners had the right to enter upon adjoining land to protect the canal from being washed away by a river by driving piles, etc., along such river, but possession of adjoining land for that purpose does not give the state title thereto.

HEARD ON ERROR.

CALDWELL, J.

On July 5, 1892, there was a suit commenced of Lee against Schlund. On August 11, 1891, these lands were resurveyed. Schlund, the defendant, claims to own land lying between the Cuyahoga river and the canal. He says he became owner of this land in 1888, and that Ferdinand Lee became his tenant, and remained such for that year, or about that, and then became his tenant again immediately following, under another contract. That tenancy was continued for a year or so after that; that then Lee deserted him and went and got a lease from the state of Ohio of these lands, and refused any longer to pay rent to Schlund, and he has been from that time to this trying to get some rent from Lee for this land.

The defendant brought various actions for forcible detainer, and after bringing the third action of this character, Ferdinand Lee went to the court to enjoin him from any longer molesting him, and to quiet his possession under his lease to that property.

Lee died, but before he died he became insolvent and owed Edwards & Company a considerable sum of money, and he transferred his lease from the state and all his improvements upon the property, and his store and fixtures, etc., to Edwards & Company in payment of that debt.

From that time forward Edwards & Company have been prosecuting this case.

The question here presented is as to who owns this property. Is it owned by the state of Ohio, or is it owned by Schlund, the defendant?

This property lies along the canal, and between the canal and the Cuyahoga river. The distance between the canal and the Cuyahoga river, is, perhaps, less than one hundred feet, at any point in dispute.

A commission was established by the legislature some years ago to preserve evidence in regard to these canal lands. It seemed that there was no record of what lands the state condemned, or what lands it bought at the time the canal was established. Land was then cheap, and sometimes a large number of acres had been overflown by waste water from the canal. Large basins in the canal were not used actually for purposes of navigation, but the waters were in one sense a part of the canal. The tow path of the canal had to be sustained, and in many places, in proximity to streams, piles had to be driven and earth and stone and brush put in to save the canal from being washed out. Lands were possessed in that way.

A surveyor was sent to look at these lands and survey them, and present the evidences of ownership on the part of the state to the commissioners, which evidences could only be made to appear by the situation of things when the surveyor went there, of what land was absolutely necessary, or was likely to have been used and was used by the state for this canal.

The surveyor made a survey, and included all the lands in question in this suit as canal lands, and it seems that the commission established

upon these maps and charts the boundaries of the canal lands, so as to include all the land in question as belonging to the state.

This act of the legislature provides that the finding of this commission establishing these lines, as I have said, makes a *prima facie* case in behalf of the state, and evidence sufficient to show that these lands were not state lands must be offered in the case to overcome that proof.

The question is whether Schlund has offered sufficient evidence in this case to overcome the *prima facie* case made by the plaintiffs who hold under the state; and as to how much land, if any, has he overcome this *prima facie* evidence?

It seems that there is a bridge across the Cuyahoga river and over the canal also at what is called the fourteen mile lock, or lock No. 37. This bridge passes over the lock right at the lowest end of it, so that the lock really lies south of the bridge, or the highway that passes over the bridge; and there is a drop on the canal so that the level of the water north of the lock is eight feet lower than it is above the lock. This makes an elevation south of this bridge of eight feet more than there is north of the bridge, and the same difference, no doubt, exists as to the tow path that exists as to the water.

The evidence clearly shows that the canal south of the bridge is all upon made land. The land there was low and flat land, so much so that the banks of the canal seem to be above the original land as it lay at that point, on both sides of the canal. The tow path, as well as the opposite bank of the canal seemed to be above the canal, and hence it is in evidence by a number of witnesses that the dirt used in making this canal and the tow path was all brought there, and the whole structure is artificial at that point. Just how high this tow path south of this bridge is above the bank of the stream, the evidence is somewhat conflicting, as might be expected, by persons who go and simply look at the lay of the land. They would not be expected to agree within several feet.

We think the weight of the evidence is that the slope that was made there for the purpose of sustaining the tow path extends substantially, if not entirely, to the edge of the water of the river, along all that portion of the land south; so that as to the land south of the bridge it is conclusive in this matter, that when the canal was built the authorities of the state took actual possession of so much of the land as was necessary to form the bed and banks of the canal and the tow path, and the bank necessary to hold the tow path and keep it in position. And that takes from the canal substantially to the river, if not entirely. There is so little land left there, appearing on the surface as the original land that was there before the canal was built, that it is substantially worth nothing to anyone, if there is any land at all.

But, after we pass below the lock north of the bridge, we meet with a different state of facts. There, the survey presented to us shows that the tow path, as well as the water in the canal, is above the land lying between the tow path and the river, but not very much above the land; and the surveys show that there is a slope at the outer edge of the tow path, and that the elevation between the land at the edge of the river and the land at the foot of this slope is just three feet. The charts of one of the surveyors show that. How much of that elevation, and just where it is does not appear from this survey. But the witnesses say that that land between the foot of the slope of the tow path and the river is substantially level; and three feet elevation would make it sub-

stantially level beyond a question. So that it appears that upon the north side of the bridge, the canal authorities certainly needed, for purposes of the canal, and the support of the tow path, nothing more than the ground on which the canal, its banks, and the tow path and the tow path slope are situated. The evidence ought to satisfy anyone that that is all that the state ever used for canal purposes north of the bridge, or substantially all.

The evidence goes to show that north of the bridge as well as south of it, and for a long ways up the river and for some distance down the river, the canal authorities at one time drove piles along the east side of the river bank in the edge of the stream. Behind these piles was put brush and rocks and material to keep the river from washing the bank. The piles that were put further south than this land were evidently driven for the purpose of throwing the water to the west, so that this bank at this particular point would not be washed so much. Those piles farther down than this land had a similar purpose, viz., to throw the water above and below, and keep the channel away from this particular point, because above and below this particular land the canal and river are not close together; there is quite a distance between them.

We are inclined to look at this in this way : That the canal authorities might easily have gone to some other person's land to protect themselves, even at quite a distance from their own land and from the canal, to protect themselves from water that might eventually wash away the banks so as to destroy the canal.

Now, taking possession of such lands for that purpose, we do not think ought to be construed as giving the state the right to that land. The owner allowed the state to pass upon that land as a mere matter of convenience.

We are inclined to think that the land between the foot of the tow path north of the bridge and east of the river belongs to Mr. Schlund, and never was owned by the state. And we will give to the plaintiffs sixty or ninety days as they may desire, to remove their buildings from that portion of the land, or make some other diposition of them.

We will give to the plaintiffs as tenants of the state all the land and all that is on the land south of the bridge, and allow the defendant to have the portion of the land north of the bridge that lies between the foot of the bank that sustains the tow path and the river. We cannot find the width of that strip from the maps. We cannot tell where the foot of that tow path is. If it becomes necessary we will have to send a surveyor to determine, in making this decree. There ought to be some definite lines established there.